**EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Plaintiff,**

v.

**Orlando J. SALATA, Defendant.**

**Civ. A. No. 89–32 Erie.**

United States District Court, W.D. Pennsylvania.

Sept. 30, 1991.

Wallace J. Knox, Patricia K. Smith, Knox McLaughlin Gornall & Sennett, P.C., Erie, Pa., for plaintiff.

Frank L. Kroto, Jr., Michael S. Janjanin, Erie, Pa., for defendant.

---

**2.** Since neither side has raised plaintiff's failure to sue its insured in this case, I need not, in view of its outcome.

## MEMORANDUM OPINION

COHILL, Chief Judge.

Before this Court is plaintiff Equitable Life Assurance Society of the United States' ("Equitable's") Motion for Summary Judgment. For the following reasons we will deny Equitable's motion.

### Background

For the purposes of its Summary Judgment Motion, Equitable does not dispute the facts as alleged by defendant Orlando J. Salata. Before explaining our reasoning for denying Equitable's motion, a brief summary of the relevant facts as alleged by Mr. Salata is necessary.

On December 6, 1985, Salata met with Equitable's Insurance Agent John Honingford and completed an application for disability insurance. Honingford read the questions to Salata and recorded Salata's oral answers on the application form. In response to one of the questions in the application, Mr. Salata stated that he had a heart arrythmia but noted no other material health problems. Mr. Salata contends that the application was materially true and correct to the best of his knowledge on this date.

On December 17, 1985, Salata took a stress test in conjunction with his annual physical scheduled for December 18, 1985. The stress test revealed an irregularity and Mr. Salata's physician recommended a more thorough nuclear stress test. At this time Mr. Salata was informed by his doctor that if the nuclear stress test was "positive", he should undergo a heart catheterization. The test was positive.

On January 14, 1986, Honingford called Salata to tell him his policy had been approved. During this phone call, Salata informed Honingford about the results of his stress tests and the heart catheterization recommended by his doctor. Mr. Salata stated to Honingford that he was concerned that this information was relevant to some of the questions on the application. Mr. Honingford told Mr. Salata he would check on whether this information was relevant to the questions in the application.

On February 21, 1986, Salata's doctor scheduled the heart catheterization procedure for March 5, 1986. On February 27, 1986, Honingford visited Salata. At this meeting Honingford informed Salata that his application had been approved by Equitable and Honingford collected Salata's first premium check. In addition, Salata and Honingford discussed Salata's upcoming heart catheterization.

During the catheterization procedure on March 5, 1991, it was necessary for Salata to undergo emergency bypass surgery. When Mr. Salata's secretary spoke with Mr. Honingford at some time between March 5 and 12, Honingford informed her that the insurance policy was dated March 3, 1986 and that Mr. Salata "was covered". On April 25, 1986, Honingford delivered the disability insurance policy to Salata.

The application and policy delivered to Mr. Salata state that a "condition precedent" to the policy is that the answers to the questions on the application are true and complete *at the time the applicant makes his first premium payment*. Equitable has denied Mr. Salata's disability claim stating that Mr. Salata's answers to the questions on the application were not accurate at the time he tendered his first premium payment, and therefore the insurance policies issued to Mr. Salata were void *ab initio*.

Mr. Salata argues that his communications with Honingford concerning his heart problems and the accuracy of his answers to the questions in the application put Equitable on notice of Salata's changed medical condition and serve to prevent Equitable from denying his disability payments. Equitable replies that because Salata admits he did not read his application before he signed it, Salata is presumed to have filed his application in bad faith and is therefore "estopped" from asserting as an affirmative defense the allegation that he informed Equitable of his changed medical condition through Honingford. Alternatively, Equitable argues that the provision of the application which states that "[n]o agent or medical examiner has authority to modify this agreement or to waive any of

The Equitable's rights or requirements" put Salata on notice that his communications with Honingford did not constitute communications with Equitable.

### Discussion

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Since Equitable has agreed, for purposes of its Summary Judgment Motion, to accept Mr. Salata's version of the facts, this Court need only determine whether Equitable is entitled to judgment as a matter of law.

Absent Salata's assertion that he informed Honingford of his change of condition prior to the delivery of his first premium payment, Equitable might be entitled to summary judgment. Under the facts as alleged by Mr. Salata, however, we must deny Equitable's motion.

■ We find unpersuasive Equitable's assertion that because Salata did not read the application before he signed it, he cannot claim to have given Equitable notice, through Honingford, of his changed medical condition after the application was submitted but before Salata tendered his first premium payment. The cases Equitable cites in support of this assertion do not address this specific issue. For instance, *Monarch Life Insurance Co v. Donahue*, 708 F.Supp. 674, 676 (E.D.Pa.1989), and *Liberman v. Metropolitan Casualty Insurance Co.*, 1987 WL 16666 (E.D.Pa.), both focus on whether an insured who does not read his application may claim to have been induced by an insurance agent into making false representations on his application or claim that certain questions from the application were not asked or that answers not recorded properly. None of the cases cited by Equitable support its argument that because Salata failed to read his application before signing it, he may not inform the insurance company, through its agent, of a changed medical condition that occurred after the application was submitted.

■ Also unpersuasive is Equitable's argument that the language in the application, informing applicants of the insurance agent's limited authority to modify the insurance contract or to waive Equitable's rights, prevents Salata from claiming he informed Equitable of his changed medical condition through communications with Honingford. Equitable relies on *Youngblood v. Prudential Ins. Co.*, 109 Pa.Super. 20, 165 A. 666 (1933), for this point. The crucial difference between *Youngblood* and this case, however, is that in *Youngblood* the application specifically states that "[n]o agent has power in behalf of the company ... to bind the company by making any promise, *or by making or receiving any representation or information."* *Youngblood*, 165 A. at 667 (emphasis added). Equitable does not suggest that this or similar language appears in the application at issue in this case. Because ambiguities in insurance policies are to be construed against the insurer, we cannot equate the general language which appears in Equitable's application with the very specific language involved in the *Youngblood* case. *St. Paul Fire and Marine Ins. Co. v. Lewis*, 935 F.2d 1428 (3rd Cir.1991). We will, therefore, deny Equitable's Motion for Summary Judgment.